# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERT UNDERWOOD, JR.,

        Defendant.

CASE NO. CR10-5293BHS

ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND DISMISS ORIGINAL INDICTMENT

This matter comes before the Court on Defendant Robert Underwood, Jr.'s ("Underwood") motion to exclude testimony of D.P. and dismiss original the indictment. Dkt. 101. The Court has considered the pleadings filed in support of and in opposition to the motion, the oral arguments of counsel, and the remainder of the file and hereby grants Underwood's motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On April 28, 2010, Underwood was charged in the indictment with three counts of Aggravated Sexual Assault in violation of 18 U.S.C. § 2241(a). Dkt. 11. Underwood is alleged to have sexually assaulted D.P. on multiple occasions in different locations between April and July of 2008.

In August of 2010, D.P., the alleged victim, was diagnosed with pancreatic cancer and given six months to live. Due to D.P.'s medical condition, on August 31, 2010, the Court granted the Government's request to preserve D.P.'s testimony for trial by

ORDER – 1

deposition. Dkt. 21. On September 22, 2010, the parties conducted a videotaped deposition of D.P., which lasted approximately six hours.

In light of the confusion regarding the time period in which the alleged sexual assaults occurred, on October 7, 2010, the Government obtained the First Superseding Indictment ("superseding indictment") which expanded the time frames for each count of sexual assault with which Underwood is charged. Dkt. 28. Specifically, the time frame for Count 1 was changed from on or about May 1, 2008 to on or about June 15, 2008 (Dkt. 11) to "April 1, 2008, and continuing through on or about June 30, 2008" (Dkt. 28). In addition, the time frame for Counts 2 and 3 was changed from on or about June 16, 2008, to on or about July 15, 2008 (Dkt. 11) to "April 1, 2008 and continuing through on or about July 30, 2008." (Dkt. 28).

On December 1, 2010, the Government produced discovery to Underwood that disclosed D.P.'s prescribed drugs before and after the deposition. On September 4, 2010, D.P. was prescribed eleven different drugs, including oxycodone "every 4 hours by mouth for breakthrough pain." Dkt. 62-2 at 44. On September 27, 2010, D.P. was prescribed four different drugs and the medical notes state that (1) "Client has been taken off all medications now except for pain, nausea, and itching," and (2) "Client limitations: Cannot open containers; unable to read/see labels; ability fluctuates; does not record blood sugars; does not follow frequency or dosage; forgets to take medications." *Id*. at 45.

Underwood also subsequently obtained a report from D.P.'s case manager and social worker regarding D.P.'s conditions on September 27, 2010. The report provides as follows:

> [D.P.] displayed significant cognitive gaps in her comprehension. She will listen to you, but when asked to repeat or paraphrase what was discussed she really is unable to do so. [D.P.] seems to understand only a portion of what is discussed and has displayed a difficult time in retaining and understanding what is going on medically. It is unclear to this [case manager] whether this is a recent development, or has been an ongoing deficit.
> ***

ORDER – 2

> [D.P.'s] vision changes and sometimes she can see okay and other times she cannot see very well. [D.P.] has gotten into other medications thinking they were pain medications and said she took pain meds when it was another medication. Hospice RN said client got confused and angry about the medi-set.

*See* Dkt. 78 at 12 (Underwood's reply brief regarding prior motion to exclude and dismiss)[1]

On February 9, 2011, the Court held a hearing on various motions. After hearing arguments from the parties, the Court concluded that Underwood was entitled to take a second videotaped deposition of D.P. *See* Dkt. 56. On February 13, 2011, D.P. passed away. Underwood was not able to take a second deposition of D.P. before she passed away.

On March 31, 2011, Underwood filed a motion to exclude testimony of D.P. and dismiss the superseding indictment. Dkt. 62. On April 21, 2011, the Court held a hearing on Underwood's motion. *See* Dkt. 85. On April 22, 2011, the Court issued an order granting Underwood's motion and dismissing the superceding indictment. Dkt. 84.

On May 31, 2011, the Court held that the original indictment survived dismissal of the superceding indictment and remains pending against Underwood. Dkt. 92.

On July 26, 2011, Underwood filed a motion to exclude D.P.'s deposition testimony and dismiss the original indictment. Dkt. 101. On August 15, 2011, the Government responded. Dkt. 107. On August 29, 2011, Underwood replied. Dkt. 113. On September 1, 2011, the Court heard oral argument from counsel and requested additional briefing. *See* Dkt. 116. On September 9, 2011, Underwood filed a supplemental brief. Dkt. 117. On September 15, 2011, the Government responded. Dkt. 118. On September 20, 2011, Underwood replied. Dkt. 119.

---

[1] The Court is unable to locate this report in the electronic file. Underwood shall either file this report, under seal, to fully develop the record or contact the Court Clerk so that a proper reference to the report is documented.

ORDER – 3

**II. DISCUSSION**

Underwood contends that the Court should exclude D.P.'s deposition testimony and dismiss the original indictment for four reasons:

> 1. . . . the defendant did not have a full and fair opportunity to question the witness regarding her memory, use of medications and mental capacity, as guaranteed by both the Fifth Amendment right to due process of law and the Sixth Amendment right to confront and cross-examine witnesses;
> 2. . . . D.P.'s deposition testimony should be excluded due to her lack of competence as a witness as guaranteed by Fed. R. Evid. 601, 602 and 603, and the defendant's Fifth Amendment right to due process of law and a fair trial;
> 3. . . . the Government violated the defendant's Fifth Amendment due process rights by failing to disclose material exculpatory and impeaching evidence prior to D.P.'s deposition – specifically D.P.'s compromised and rapidly deteriorating mental capacity, and her use of narcotic medications effecting her mental capacity – as required by *Brady v.Maryland*, 373 U.S. 83 (1963), and *Giglio v. U.S.*, 405 U.S. 150 (1972); and
> 4. . . . the Government violated the defendant's Sixth Amendment rights to speedy indictment and trial based on its two-year-long pre-indictment delay, and subsequent pre-trial delays sought for the purposes of responding to the defendant's motions.

Dkt. 101 at 2-3.

**A.     Right to Confront Under the Sixth Amendment**

The Confrontation Clause contained in the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Maryland v. Craig*, 497 U.S. 836, 844 (1990). While face-to-face confrontation at trial is preferable, it is not indispensable to a defendant's right to confront adverse witnesses. *Craig*, 497 U.S. at 849-50 ("[T]hough we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers"). The primary purpose of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Craig*, 497 U.S. at 845; *see Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (stating that

ORDER – 4

"[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination") (citations and internal quotation marks omitted).

This primary concern is satisfied by "substantial compliance" with the purposes underlying the confrontation requirement – i.e., that a witness be physically present at trial, testify under oath, be available for cross-examination, and that the jury be able to observe the witness's demeanor. *Craig*, 497 U.S. at 845-46 ("The combined effect of these elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings") (citations omitted); *see also Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam) (holding that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness's testimony").

The Ninth Circuit has held that a "limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant and denies the jury sufficient information to appraise the biases and motivations of the witness." *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999). Specifically, the Ninth Circuit considers three factors in determining whether a defendant's confrontation rights have been violated: "(1) the excluded evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999).

In dismissing the superceding indictment, the Court made findings regarding the expanded time frames of the charges as well as D.P.'s medical conditions. Specifically, the Court stated as follows:

> Taking into account the factors established by the Ninth Circuit, the Court concludes that: (1) the excluded evidence was relevant in that a second deposition of D.P. would have included questions on the expanded time frames of when the alleged crimes in the superseding indictment occurred as well as questions regarding D.P.'s memory and issues related to her use of medications; (2) the Government's legitimate interest in taking this case to trial based on D.P.'s deposition testimony does not outweigh Underwood's interest in having the opportunity to fully cross-examine his accuser regarding the expanded time frames **and the issues surrounding D.P.'s mental capacity and use of medication**; and (3) the original deposition of D.P. would be insufficient for the jury to assess the credibility of the witness. *See Beardslee*, 197 F.3d at 383.
>
> ***
>
> **The issues surrounding D.P.'s memory, as well as her use of medication and the effects that use had on her mental capacity, and therefore her credibility as a witness during the deposition, further inform the Court's conclusion that Underwood did not have a full and fair opportunity to cross examine D.P.** While the Government argues that any prejudice to Underwood can be cured by his introduction of extrinsic evidence at trial to further discredit D.P., the Court cannot conclude that such introduction would in fact cure the problem. Indeed, as the Supreme Court has held, the primary purpose of the Confrontation Clause is to ensure the reliability of the evidence presented against a criminal defendant. *Craig*, 497 U.S. at 845. **The Court concludes that Underwood's Sixth Amendment right to confront D.P. was not fully satisfied by the deposition that took place before he received evidence of the issues surrounding her memory and use of medication.** Therefore, because the impeachment materials provided to D.P. after the original deposition occurred deprived him of a full and fair opportunity to confront D.P. under the Sixth Amendment, the Court concludes that the superseding indictment must be dismissed.

Dkt. 84 at 9-10 (emphasis added).

While it would seem that the Court's prior conclusions would result in dismissal of the original indictment, the Government contends that Underwood can still present sufficient information for the jury to assess the credibility of D.P. Specifically, the Government argues that

> The defendant, fully aware of D.P.'s condition and that she was on medication, chose not [to] question D.P. about whether the medication was affecting her that day. More importantly, the defendant can still make use of this recently discovered information. At trial, he can introduce evidence of D.P.'s diminished cognitive abilities, her decreased memory, and the possible effects of the medication on her mental status at the time of the

ORDER – 6

> deposition. As previously noted, extrinsic use of this information is more effective than confronting D.P. who, given her low intelligence and medical condition, would have given confusing answers or denied that she was confused or her memory was affected. Since the defendant can still make effective use of the information there is no violation to his Sixth Amendment right to confront.

Dkt. 107 at 9. The Court disagrees with the Government. Although the difficult factual situation may not be due to any Government misconduct, the current situation is also not the product of Underwood's actions or decisions in preparing his defense.

In addition to its previous conclusions, the Court also concludes that the evidence of D.P.'s medical condition undermines the reliability of the deposition because the testimony was not subject to the "rigorous testing" guaranteed to Underwood. First, information that a person is on drugs is insufficient alone to assess the effect that the drugs have on that individual. While the fact finder may hear evidence of D.P.'s prescriptions and, possibly, an expert on how these particular drugs affect individuals generally, Underwood is unable to probe and expose the effect that the prescribed drugs had on D.P. Furthermore, it is impossible to determine exactly what drugs D.P. was on during the deposition because there is evidence that D.P. was unable to read and see the pill labels and evidence that D.P. has used other medications thinking that those medications were pain medications.

Second, there is direct medical evidence that D.P. suffered from severe testimonial infirmities which was obtained shortly after the deposition. For example, five days after D.P.'s deposition, the medical staff attending to D.P. noted D.P.'s limitations were as follows: "Cannot open containers; unable to read/see labels; ability fluctuates; does not record blood sugars; does not follow frequency or dosage; forgets to take medications." Dkt. 62-2 at 45. Moreover, D.P. "displayed significant cognitive gaps," was unable to "repeat or paraphrase what was discussed," and seemed "to understand only a portion of what is discussed." Based on this evidence, D.P.'s forgetfulness and confusion cannot be contested.

Therefore, contrary to the Government's contention, the Court concludes that Underwood is not able to "make effective use" of the subsequent medical evidence of D.P.'s condition during the deposition. The unique facts of the case present a situation in which Underwood is precluded from probing and exposing the severity of D.P.'s testimonial infirmities. Morever, these infirmities relate to her cognitive abilities and permeate *every* statement provided by D.P. As a result, the fact finder will never have sufficient information to appraise D.P.'s biases and motivations, and Underwood is unable to properly or meaningfully confront the witness presented against him.

**B.     Underwood's Other Arguments**

Because the Court has concluded that D.P.'s deposition must be excluded and the original indictment must be dismissed, the Court need not reach the other issues presented by Underwood.

### III. ORDER

Therefore, it is hereby **ORDERED** that Underwood's motion to exclude testimony of D.P. and dismiss the original indictment (Dkt. 101) is **GRANTED**.

DATED this 7th day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge